■ In the Matter of the Claim of GLORIA CLARK, Respondent. CAPITAL AREA COMMUNITY HEALTH PLAN, INC., Appel-

lant; THOMAS F. HARTNETT, as Commissioner of Labor, Respondent.—Mikoll, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed September 2, 1988, which ruled that claimant was entitled to receive unemployment insurance benefits.

Claimant was employed as a laboratory technician by Capital Area Community Health Plan, Inc. (hereinafter CHP) for approximately six months at its center located in the Town of East Fishkill, Dutchess County. Claimant left her employment because of fears about contracting infectious diseases by vapor transmission from the use of the Coulter Dual Dilutor Three, a hematology testing machine. When her supervisor directed her to continue performing hematology testing on site, rather than sending it to another laboratory as she wanted, claimant refused and left CHP. Thereafter, CHP's coordinator, Hilary Ford, contacted the manufacturer of the machine and was told that the company had not received a single report of health complaints from operators of the machine and that the machines were not being recalled. Ford contacted claimant by telephone and told her of her inquiry and that her job was still open. Claimant still refused to return to work.

After applying for unemployment insurance benefits, claimant testified at a hearing that she was aware that the State Department of Health had conducted periodic tests on all the machines at CHP, including the Coulter Dual Dilutor Three, to assure quality and safety standards. She also said that she did not have knowledge of a single occasion when CHP failed any such tests. Moreover, the Department of Health examined the equipment at the request of claimant's husband after her departure and declared it operational and safe. However, claimant testified that the machine caused spray or droplets to adhere to the cap of the curette into which the diluted blood was caught. Claimant believed the machinery to be dangerous and a possible source of the spread of infectious disease if vapor escaped the curette. Although claimant's supervisor confirmed the formation of droplets of air on the curette cap from the force of diluting the blood, CHP refused to change the machine or to agree to claimant's suggestion that blood samples be tested elsewhere.

The Administrative Law Judge found that claimant refused to work on her employer's blood machine and walked off the job. He found, however, that claimant was under a "legitimate and reasonable apprehension concerning her own safety" in dealing with blood samples and found her departure to be with good cause. The Unemployment Insurance Appeal Board

affirmed the Administrative Law Judge's decision. CHP now appeals, claiming that the record lacks substantial evidence to support the Board's award of benefits.

If a claimant voluntarily separates herself from employment without good cause, the claimant is ineligible for unemployment insurance benefits (Labor Law § 593 [1]). Whether good cause exists is a factual question to be resolved by the Board, which finding will not be disturbed if supported by substantial evidence *(Matter of Montalvo [New York City Police Dept.—Roberts],* 105 AD2d 1036).

There should be a reversal in this case. Although claimant was found to be in fear of infection from use of hematology equipment, there has been no objective proof to support her contention that vapors or spray emanate from the machine which jeopardize her health. To the contrary, testing failed to disclose spray emission. Thus, the Board's conclusion that claimant's fear was legitimate and reasonable is not supported by substantial evidence *(Matter of Christian [Levine],* 51 AD2d 854).

Decision reversed, without costs, and employer's objection to claimant's entitlement to benefits sustained. Kane, J. P., Mikoll, Levine, Mercure and Harvey, JJ., concur.